# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 22, 2003 Session

## STATE OF TENNESSEE v. AARON EUGENE STENBERG

**Direct Appeal from the Circuit Court for Maury County**
**Nos. 11770, 11773B      Robert L. Jones, Judge**

---

**No. M2002-01096-CCA-R3-CD - Filed June 13, 2003**

---

The trial court sentenced the defendant to an effective term of six years with 120 days incarceration followed by probation as a result of the defendant's guilty pleas to three counts of vandalism over $10,000, one count of vandalism over $1,000, one count of vandalism over $500, and one count of vandalism under $500.  In this appeal, the defendant argues: (1) his sentence is excessive; (2) the trial court erred in denying him full probation; and (3) the trial court erred in denying judicial diversion.  We remand for correction of clerical errors in some of the judgments but otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed as Modified; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

John S. Colley, III (on appeal), and Bobby W. Sands (at trial), Columbia, Tennessee, for the appellant, Aaron Eugene Stenberg.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Mike Bottoms, District Attorney General; and Daniel J. Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On January 12, 2000, and January 18, 2000, the twenty-one-year-old defendant drove his truck while his passenger, co-defendant Brandon Stricklin, used the defendant's semi-automatic assault rifle to shoot telephone equipment.  The defendant pled guilty to two counts of vandalism over $10,000 resulting from these incidents.  On February 1, 2000, the defendant fired shots into a Chevrolet Blazer parked in a yard and drove while Stricklin shot telephone and cable television equipment mounted on a utility pole.  The defendant pled guilty to one count of vandalism over $10,000 for the damage to the telephone equipment, one count of vandalism over $1,000 for damage to the vehicle, and one count of vandalism over $500 for the damage to the cable television

equipment. The defendant also pled guilty to vandalism under $500 for shooting a road sign on February 3, 2000.

Following a sentencing hearing, the trial court denied judicial diversion and imposed the following sentences: four-, five-, and six-year sentences on the vandalism over $10,000 convictions; a four-year sentence on the vandalism over $1,000 conviction; a two-year sentence on the vandalism over $500 conviction; and a suspended sentence of eleven months and twenty-nine days for vandalism under $500. All sentences were ordered to run concurrently; the defendant was sentenced to 120 days of confinement on all felony convictions followed by probation; and the defendant was declared eligible for work release. The defendant contends the trial court imposed an excessive sentence, erred in denying him full probation, and erred in denying his request for judicial diversion. We disagree.

## I. LENGTH OF SENTENCE

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for these offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

In the instant case, the trial court declared that it applied three enhancement factors to the defendant's sentences: factor (6), the amount of damage to property sustained by the victim was particularly great; factor (9), the defendant employed a firearm; and factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(6), (9), (10) (1997).[1]

---

[1]Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

The trial court stated it applied the defendant's "youth, immaturity, and maybe some slight impairment" as mitigators. *See id.* § 40-35-113 (6), (8) (1997). The proof at sentencing established the defendant had impaired language ability and had been a special education student. The trial court also indicated the defendant's intoxication at the time of the offenses "could be a mitigating factor."

The defendant contends the trial court misapplied enhancement factor (6), the amount of damage to property sustained by the victim was particularly great, and enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. *See id.* § 40-35-114(6), (10) (1997). We agree that the trial court misapplied these factors.

The proof in the record shows that BellSouth was the victim of all three of the defendant's convictions for vandalism over $10,000. A BellSouth employee testified the total costs to repair the damaged telephone equipment was $42,307.94, and this cost was less than the cost of replacing the equipment. While there is no reason to question that the company sustained at least $10,000 in loss as a result of each incident, there is no proof in the record as to the amount of damages suffered for each act of vandalism. If each offense caused one-third of the damages, then approximately $14,103 in damages was caused by each offense.

Vandalism, like theft, is graded based on the amount of damages sustained by the victim. *See* Tenn. Code Ann. §§ 39-14-408(c)(1), -14-105 (1997). Since the punishment for vandalism is already enhanced based on the amount of damages, use of enhancement factor (6) is generally prohibited as double enhancement. *See* State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). We recognize that this court has held that where the value of stolen property greatly exceeds the minimum amount for the class of the theft, a sentencing court may apply enhancement factor (6). State v. Jacob Dyck, No. E2001-00476-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 355, at *22 (Tenn. Crim. App. Apr. 22, 2002, at Knoxville), *perm. to app. denied* (Tenn. 2002). However, in the instant case, the amount of damages for each conviction does not appear to greatly exceed $10,000, the minimum amount of the range; therefore, enhancement factor (6) should not have been applied to any of the defendant's sentences.

The trial court also misapplied enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(10) (1997). Although the defendant shot the Chevrolet Blazer while it was in the yard of a residence, there was no proof in the record that anyone was in the residence or otherwise in harm's way at the time. Further, it is apparent from the record that the remaining offenses occurred in remote locations. There is no proof that any other persons were placed in imminent danger by the remaining acts of vandalism. Therefore, there was insufficient evidence to support the application of this enhancement factor to any of the sentences.

Due to the erroneous application of enhancement factors, we will review the sentencing decisions of the trial court *de novo* with no presumption of correctness. *See* Poole, 945 S.W.2d at 96. However, the wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any

remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002).

The defendant does not contest the application of enhancement factor (9), the defendant employed a firearm, and we find that it was properly applied. *See* Tenn. Code Ann. § 40-35-114(9) (1997). Further, we determine that enhancement factor (3), the offense involved more than one victim, applies to the defendant's sentences for vandalism over $10,000 and vandalism over $500. *See* Tenn. Code Ann. § 40-35-114(3) (1997). A telephone company employee testified that approximately 270 telephone customers were deprived of telephone service during each of the three times the telephone equipment was vandalized. The witness stated these customers would have been hindered from seeking assistance in the event of an emergency. A representative of the cable company also testified customers reported loss of service following the vandalism of the cable equipment. Those persons who were deprived of services were also victims of the defendant's crimes. We place great weight upon these enhancement factors.

In addition, the pre-sentence report indicates the defendant smoked marijuana until the time of his arrest; thus, the defendant had a previous history of criminal conduct. *See* Tenn. Code Ann. § 40-35-114(1) (1997). Furthermore, one or more persons accompanied the defendant on each of the felony offenses. The gun and automobile belonged to the defendant. Thus, the record established he was "a leader" in the commission of these offenses. *See id.* § 40-35-114(2) (1997).

The trial court's application of the defendant's youth, immaturity, and mild impairment as mitigating factors was proper, given the testimony at sentencing by the defendant and his parents regarding the defendant's life-long struggle with a learning disability. We decline to give significant weight to mitigating factor (1), the defendant's criminal conduct neither caused nor threatened serious bodily injury. *See id.* § 40-35-113(1).

There were four enhancement factors for all but one felony offense, and three enhancement factors for it. We conclude upon our *de novo* review that the sentences imposed by the trial court are entirely appropriate.

## II.  INCARCERATION

The defendant maintains the trial court improperly denied him full probation. We conclude the trial court properly imposed a sentence of split confinement with 120 days of incarceration.

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also* State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).

According to the proof at sentencing, the defendant and members of the Morgan family were involved in a disagreement. The defendant testified that during the episode on February 1st, he and his companions drove past the Morgan residence and fired shots into the air. He said they also shot a utility pole before returning to the Morgan house, where he shot the Chevrolet Blazer parked in the Morgan's yard. The defendant testified he was in the bed of his truck attempting to fire more shots into the air when he fell and accidentally shot the Blazer.

The trial court found the defendant was motivated by a desire to frighten the Morgan family. Further, the proof in the record shows the defendant participated in at least four criminal episodes while he was under the influence of intoxicants. In addition, these episodes involved the use of a firearm and created a tremendous amount of property damages. The record supports the trial court's finding that some time of confinement was necessary to avoid depreciating the seriousness of the offenses.

Further, our review of the record shows the trial court found the defendant's version of the events which resulted in his shooting the vehicle in the yard of the Morgan family to be a "lie." In determining a defendant's suitability for total probation, the trial court may properly consider credibility, remorse, and candor as they reflect upon potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(5); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). In summary, the trial court did not err in requiring a period of incarceration.

## III.  JUDICIAL DIVERSION

The defendant argues the trial court erred in denying him judicial diversion. Judicial diversion is a "legislative largess" where a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993).

The same guidelines are applicable in diversion cases as are applicable in probation cases; however, they are more stringently applied in diversion cases. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *perm. to app. denied* (Tenn. 1995), *overruled on other grounds by* State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000); State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983). We have previously concluded the trial court did not err in denying total probation; therefore, for the same reasons, the trial court did not err in denying judicial diversion. *See* Bingham, 910 S.W.2d at 456-57.

## IV.  CLERICAL ERRORS

The trial court ruled at the sentencing hearing that the defendant would be on probation for ten years following his term of incarceration.  However, none of the judgments provide for a ten-year probationary period.  When there is a conflict between the verbatim transcript and the judgment, the transcript controls.  State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991).  Although a ten-year probationary period exceeds the actual sentence imposed in any one count, the trial court was authorized to impose probation for any period of time "up to and including the statutory maximum time for the class of the conviction offense."  Tenn. Code Ann. § 40-35-303(c).  Vandalism over $10,000 is a Class C felony with a range of punishment from three to fifteen years, and vandalism over $1,000 is a Class D felony with a range of punishment from two to twelve years.  *See id.* § 40-35-111(b)(3), (4).  Thus, a ten-year probationary period is proper for those offenses.  It would not be proper for vandalism over $1,000; it is a Class E felony with a maximum possible punishment of six years.  *See id.* § 40-35-111(b)(5).  Accordingly, we remand for entry of amended judgments reflecting ten years of probation on the vandalism over $10,000 and vandalism over $1,000 convictions.

## CONCLUSION

Although the trial court misapplied two enhancement factors, we conclude that the applicable enhancement and mitigating factors support the sentences imposed by the trial court.  We further conclude the trial court properly imposed split confinement with 120 days to be served in incarceration.  Further, we hold the trial court did not err in denying the defendant's request for judicial diversion.  We remand for entry of amended judgments correcting the clerical errors, but otherwise affirm the judgments of the trial court.

_____

JOE G. RILEY, JUDGE